Emmett J. Schnepp, J.
These actions involved the lease of a parcel of land and a structure known as 759 South Main Street, Canandaigua, New York, by Colonial Inn of Canandaigua Realty, Inc. (Colonial) to Anthony T. Powderly, II. Powderly, by summons dated January 15, 1973 and served on January 18, *279 1973, instituted a specific performance action to compel Colonial to perform the terms of an exclusive option granted to Powderly to purchase the said premises during the lease term. Colonial, by summons dated January 12, 1973 and served on January 18, 1973, instituted a declaratory judgment action to determine the rights and legal relations of the parties under the lease. The actions were consolidated and reached for trial at a Trial Term of the Supreme Court held in and for the County of Ontario and testimony was received on March 30 and April 18, 1973. No order of consolidation has been submitted and the Clerk of the County of Ontario is directed and authorized to consolidate the file of said two actions above entitled under the file number of the action entitled “ Anthony T. Powderly, II, d/b/a Steamboat Inn, plaintiff v. Colonial Inn of Canandaigua Ttealty, Inc., defendant ’ ’.
Upon the testimony and the exhibits it is found as follows; On June 12,1967 the parties entered into a lease of the premises commencing on August 1, 1967 and terminating on July 31, 1977, for use and occupancy for the conduct of a restaurant and tavern business, at a rental of $400 per month for the first five years and $450 for the last five years of the term. The lease required Powderly to pay water charges and, all real estate taxes and special assessments and provided that in the event of a default in the payment of the taxes ‘1 for a period of six months from the due date of said taxes this lease shall be null and void ’ Powderly agreed to furnish all insurance including fire insurance in the minimum amount of $60,000 for the first five-year period and $75,000 for the remaining term and provide public liability insurance in the amount of1 $100,000-$200,000 coverage and Colonial agreed to co-operate in procuring such insurance. By paragraph 31st of the lease Powderly was given the option during the term of the lease to purchase the real estate for the sum of $78,500, and upon exercise of the option, 95% of the total rental paid by him “ at the time of said option shall be applied to the said purchase price ’ ’, and the difference between said purchase price and rentals ‘ ‘ shall be said sum payable in cash at the time of closing ’ ’. On October 24, 1972 Colonial notified Powderly that the lease was terminated and all rights and obligations thereunder voided because of his default in the payment of the 1972 Ontario County tax and City of Canandaigua tax and the 1971-1972 Canandaigua School District tax. This communication also terminated a security agreement, a matter not before this court, relating to the sale of certain goods and chattels, because of judgments in favor of *280 the New York State Tax Commission. The school taxes became due in October, 1971, the county taxes in February, 1972 and the city taxes in May, 1972. The notice was received by Powderly on October 25,1972 and he paid the taxes in full on October 27, 1972. In the prior years there was a default of1 more than six months in the payment of the city and school taxes, which were paid on October 22, 1971, October 30, 1970, October 24, 1969 and November 25, 1968, and in two of those years there was a default of more than six months in the payment of the county tax. The rent was due on the first day of each month and after September, 1970 was paid to and accepted by Colonial at the end of each month including the rent for October, 1972. Rent checks for November and December, 1972 were tendered by Powderly but refused by Colonial and no rents were thereafter tendered. On December 5, 1972 Powderly gave written notice of his exercise of the option to purchase the real property pursuant to the lease, which Colonial rejected, contending that the lease agreement had been terminated before the exercise of the option. By offer dated December 19, 1972 and accepted on December 20, 1972 Powderly agreed to sell the real property, fixtures and equipment to Robert F. Clifford for the sum of $140,000, allocated $70,000 to the furniture, fixtures and restaurant equipment and the balance to the land, building improvement and structure, contingent upon obtaining title pursuant to the option clause in the lease agreement with Colonial. This contract was conditioned upon the purchaser’s obtaining a purchase-money mortgage of not less than 80% of the total purchase price of $140,000, upon terms and conditions satisfactory to him, and the issuance of a full liquor license, which conditions have not been performed. This agreement makes provision for disbursement at closing of the proceeds of the transfer to the creditors named in an audited statement to be furnished by Powderly along with releases and judgment satisfactions as to all secured creditors and proof of satisfaction of Internal Revenue Service claims and releases from New York State Tax Commission. This contract remains in full force and effect until June 1, 1973 by agreement dated March 30, 1973. On December 19, 1972 a Federal tax lien was filed on the premises, which were seized by the Federal Government and remain padlocked, closed and nonoperating, Powderly was unable to obtain bank or other financing sufficient to provide him with funds to complete the option of purchase of the property, upon which a balance is due of $54,417.50 after application of 95% of the rentals paid to date ' *281 by Powderly. At the time of the exercise of the option, fire insurance on the building totaled $62,500, a portion of which was not renewed on its expiration, because of the nonoccupancy of the premises, and the amount of insurance canceled was replaced by Colonial upon payment of premium of $328. Outstanding judgments and liens against Powderly total approximately $43,800, he owes secured creditors about $25,000, and there are additional taxes owing in the amount of approximately $2,000. Powderly made extensive capital improvements to the building during his occupancy under the. lease, including the installation of a fire resistant brick wall in the kitchen and other improvements required by fire insurance underwriters, installation of a new roof and various other physical capital improvements including insulating and heating and improving the main dining room.
The contract vendee Clifford has a telephone conditional commitment of the purchase-money mortgage, could have more money if he desired, and would pay cash if1 necessary. While no application has been made for a liquor license, Clifford is the sole purchaser and has had 15 different liquor licenses previously issued to him. In the event Powderly is able to consummate such a sale of the real and personal property, he would have sufficient moneys to discharge the liens and judgments and make payment of the balance due Colonial under the contract.
In a decision by this court on a motion by Colonial for summary judgment it was ruled that the failure of Powderly to pay the taxes in accordance with the lease agreement constituted a technical forfeiture but that equity does not favor forfeiture of leases and has the power, although not unrestrained, to relieve from the enforcement of such forfeiture where justice demands, depending upon the conduct and equities existing between the parties, and with due regard to their respective legal rights.
At the time the lease was determined to be forfeited by Colonial, the tenant was paying the rent in an acceptable manner, he paid the taxes, the covenants of the lease had been substantially performed by him and there was no injury whatever to Colonial from Powderly’s failure to comply strictly with the lease. (See Ogden v. Hamer, 268 App. Div. 751.) Thereafter the rent was tendered by Powderly and rejected by Colonial for November and December, 1972, and no injury resulted to -Colonial, other than for insurance premiums totaling $328 paid by Colonial on March 1,1973, and arising from the nonissuance *282 of insurance policies on February 20, 1973 due to the nonoccupancy of the premises. The argument of Colonial that by reason of the numerous judgments and liens filed against Powderly he cannot have equitable relief because of the doctrine that “ he who comes into equity must come with clean hands ” is without merit. His conduct in this regard was not immoral or unconscionable, and was not directed to the subject matter in litigation. Colonial has not been injured thereby and this doctrine has no application whatever under the facts and circumstances existing here. (National Distillers & Chem Corp. v. Seyopp Corp., 17 N Y 2d 12.)
Whether relief should be granted or denied here is a question which is addressed peculiarly to the conscience of the court, whose province in the equitable action of specific performance is to do equity and compel fair dealing and the court is free to do that which its conscience dictates. In arriving at a determination the court must consider the provisions of the lease under which 95% of the rents paid by Powderly are applicable to the purchase price of the property under the lease option, the extensive improvements made by Powderly to the real property, his substantial performance of the lease covenants, and the insistence of Colonial in claiming the forfeiture for failure to pay taxes without a prior demand for their payment (Jackson ex dem. Weldon v. Harrison, 17 Johns. 66), and its attempt to take advantage of Powderly’s financial predicament.
Based upon the proofs before the court it is found that Powderly should be relieved from the enforcement of the forfeiture upon the conditions set forth herein. Colonial’s claim of a forfeiture delayed performance of the Powderly-Clifford contract and disrupted any attempt to perform the conditions of the contract, and equity and good conscience dictate that Powderly be provided with the opportunity to obtain the financial ability, through performance of the Clifford contract, to fulfill his obligations to Colonial. From the testimony of Clifford it is apparent that the mortgage and liquor, license contingencies in Ms contract with Powderly are capable of fulfillment. A holding here that the failure of Powderly to pay taxes constituted a forfeiture and a denial to Mm of any relief in Ms action for specific performance would be unjust, inequitable, harsh, oppressive and unconscionable, would violate the spirit of the lease and not serve the ends of justice. Colonial should not be rewarded by denying relief to Powderly, without giving Mm the. opportunity to obtain the financial ability to perform *283 the option agreement. Good conscience requires that, under the circumstances here, this court of equity exercise its power and render a conditional decree. (55 N. Y. Jur., Specific Performance, § 79.)
Accordingly it is directed that Powderly be granted 90 days from the date of the filing- of the judgment herein, which it is directed be filed in an expeditious manner, to obtain the financial ability, through the medium of his contract with Robert F. Clifford dated December 20, 1972, to perform the conditions on his part relating to the option agreement described in the within specific performance action. Upon his obtaining financial ability from such source within such period, it is directed that the agreement set forth in the complaint be specifically performed and Colonial shall perform such option agreement and execute, acknowledge and deliver a good and sufficient deed of the premises described in the complaint, and Powderly upon delivery or tender of such conveyance shall pay to Colonial the purchase money named in such agreement, and the sum of $328 to which Colonial is hereby adjudged to be entitled for payment of various insurance premiums, and 5% of the rents due under the lease for the months beginning November, 1972 to the date of closing, less the costs of this action. In the event the contract of Powderly with Robert F. Clifford is not extended for such 90-day period by June 1, 1973, Powderly shall be barred of his right to specific performance of said contract. Further, in the event the contract is extended and Powderly fails to perform such option agreement within the time specified, he shall be barred of his right to specific performance of said contract and such contract shall be given up to be canceled. In the event Powderly is -so barred his rights under the said lease shall be forfeited and terminated and Colonial shall recover of Powderly the insurance premiums advanced in the amount of $328, rent as provided in the lease from November, 1972 to and including the last day Powderly has the right to complete such option contract, unpaid water charges and unpaid taxes adjusted to such date, together with the costs of this action to be taxed and have execution therefore.
This constitutes the decision of the court pursuant to CPLR 4213, which shall retain continuing jurisdiction. Inconsistent requested findings are refused.